# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1682

_____

Minnesota Majority

*Plaintiff*

Minnesota Voters Alliance; Minnesota Northstar Tea Party Patriots; Election Integrity Watch; Susan Jeffers, individually and as an election judge; Dan McGrath; Andy Cilek

*Plaintiffs - Appellants*

v.

Joe Mansky, in his official capacity as the Elections Manager for Ramsey County; Virginia Gelms, in her individual and official capacity as the Elections Manager for Hennepin County; Mike Freeman, in his official capacity as Hennepin County Attorney; John Choi, in his official capacity as Ramsey County Attorney; Steve Simon, in his official capacity as Secretary of State

*Defendants - Appellees*

_____

No. 15-1741

_____

Minnesota Majority

*Plaintiff*

Minnesota Voters Alliance; Minnesota Northstar Tea Party Patriots; Election Integrity Watch;

Susan Jeffers, individually and as an election judge;
Dan McGrath; Andy Cilek

*Plaintiffs - Appellees*

v.

Joe Mansky, in his official capacity as the Elections Manager for Ramsey County;
Virginia Gelms, in her individual and official capacity as the Elections Manager
for Hennepin County; Mike Freeman, in his official capacity as Hennepin County
Attorney; John Choi, in his official capacity as Ramsey County Attorney

*Defendant*s

Steve Simon, in his official capacity as Secretary of State

*Defendant - Appellant*
_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 20, 2016
Filed: February 28, 2017
_____

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Several organizations and individuals sued the Minnesota Secretary of State
and Ramsey and Hennepin county election officials, attacking a statute prohibiting
the wearing of political insignia at a polling place. This court previously reversed
dismissal of these groups' as-applied First Amendment claim. ***Minnesota Majority***

***v. Mansky***, 708 F.3d 1051, 1059 (8th Cir. 2013).  On remand, the district court granted summary judgment for the defendants.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Minnesota Statute § 211B.11 prohibits wearing a "political badge, political button, or other political insignia . . . at or about the polling place on primary or election day."  To help determine which materials were political, Minnesota election officials distributed an Election Day Policy with examples including:  "Issue oriented material designed to influence or impact voting" and "Material promoting a group with recognizable political views (such as the Tea Party, MoveOn.org, and so on)."  Election judges were instructed to ask anyone wearing an item violating the Policy to remove or cover it.  If a person refused, the election official should allow the person to vote, but record the person's name and address for potential misdemeanor prosecution.

Minnesota Majority, Minnesota Voters Alliance, Minnesota Northstar Tea Party Patriots, and their association—Election Integrity Watch ("EIW")—sued the Secretary of State and county election officials ("Minnesota") to enjoin enforcement of the statute and declare it unconstitutional.  EIW alleged it was invalid—both facially and as-applied—under the First Amendment and violated their Equal Protection rights due to selective enforcement.  Individuals associated with EIW claimed their speech was chilled because they could not wear Tea Party logos and slogans at their polling places without fear of legal action.

The district court initially dismissed all claims.  This court affirmed as to the Equal Protection and facial First Amendment claims, but reversed and remanded the as-applied First Amendment claim.  ***Minnesota Majority***, 708 F.3d at 1059.  After "giv[ing] the parties sufficient opportunity to create an acceptable record," the district

court granted summary judgment against EIW on the as-applied First Amendment claim.

## II.

This court reviews de novo the grant of summary judgment. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." ***Id.*** Facts "must be viewed in the light most favorable to the nonmoving party," but "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" ***Id.***, *quoting* ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986). There is no genuine issue if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." ***Matsushita***, 475 U.S. at 587.

A polling place is a nonpublic forum. ***Minnesota Majority***, 708 F.3d at 1057. Restrictions on speech in a nonpublic forum are constitutionally valid if viewpoint neutral and "reasonable in light of the purpose which the forum at issue serves." ***Id.*** at 1057, *quoting* ***Perry Educ. Ass'n v. Perry Local Educators' Ass'n.***, 460 U.S. 37, 49 (1983). A state "has a legitimate interest in 'maintain[ing] peace, order and decorum' in the polling place" and "a compelling interest in 'protecting voters from confusion and undue influence' and 'preserving the integrity of its election process.'" ***Id.***, *first quoting* ***Mills v. Alabama***, 384 U.S. 214, 218 (1966); *then quoting* ***Burson v. Freeman***, 504 U.S. 191, 199 (1992).

Here, the statute and Policy are viewpoint neutral and facially reasonable. *Id.* On remand, EIW needed to come forward with specific facts showing that banning Tea Party apparel in particular was not reasonable in light of the statute's purpose. *See id.* at 1057-59.

EIW argues the statute as applied to Tea Party apparel is not reasonable because the Tea Party is not a political party in Minnesota, does not endorse candidates or ballot issues, and its materials do not relate to anything on the ballot. EIW asserts that the apparel conveys only a philosophy, not an endorsement of particular candidates, ballot measures, or political parties.

EIW's argument fails to address that the statute and Policy prohibit more than election-related apparel. The statute and Policy prohibit "political" apparel, defined as: "Material promoting a group with recognizable political views."

Even if Tea Party apparel is not election-related, it is not unreasonable to prohibit it in a polling place. In order to ensure a neutral, influence-free polling place, all political material is banned. To demonstrate that the Tea Party is political, Minnesota provided polling data and media coverage supporting the public perception that the Tea Party is political. It also noted that as of July 2010, the Tea Party was a recognized caucus in the U.S. House of Representatives. EIW offers nothing to rebut this evidence that the Tea Party has recognizable political views. A nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson*, 643 F.3d at 1042, *quoting Matsushita*, 475 U.S. at 586-87. EIW has failed to demonstrate a genuine issue of material fact whether Tea Party apparel is political. Banning apparel with its name and logo is "reasonable because it is wholly consistent with the [state]'s legitimate interest in preserving" polling place decorum and neutrality. *See Perry*, 460 U.S. at 50.

EIW also argues that individuals in Tea Party apparel were victims of selective enforcement (concluding this indicates that the "protectable interest is not so 'compelling'"). As evidence of selective enforcement, some wearing Tea Party apparel stated that they were asked to remove or cover it—causing voting delays and some of their names and addresses to be recorded. However, others wearing "political" apparel—Sierra Club and Target logos and all red or blue—voted without incident. (EIW agrees that individuals in Tea Party apparel were not denied access to the polling place, and some voted without being asked to remove or cover their Tea Party apparel.)

This argument fails. EIW offers only speculation that voters in other political apparel escaped enforcement of the statute. EIW's repeated assertions that there is "no evidence" of enforcement against non-Tea-Party political apparel and that "it is believed" the statute was not enforced except against Tea Party apparel is not "com[ing] forward with specific facts." *See* ***Torgerson***, 643 F.3d at 1042. EIW's evidence shows no more than "metaphysical doubt," which is not a genuine issue of material fact. *See* ***id.***

Based on the evidence, no reasonable trier of fact could conclude that the statute and Policy as applied to EIW violated its First Amendment rights. The district court properly granted summary judgment.[1]

\* \* \* \* \* \* \*

---

[1]Given this disposition of appeal 15-1682, it is not necessary to address the Secretary of State's cross-appeal 15-1741, which is dismissed as moot. However, the district court's ruling on the Secretary's jurisdictional arguments should not be followed, as it characterizes this court's silence as implicit rejection of those arguments. ***Minnesota Majority v. Mansky***, 62 F. Supp. 3d 870, 874-75 (D. Minn. 2014).

The judgment is affirmed.

_____